# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ernest O. Nelson,                                               Civil No. 07-4693 (DWF/SRN)

               Plaintiff,

v.                                                     **MEMORANDUM**
                                                          **OPINION AND ORDER**

Anoka County Community Action
Program,

               Defendant.

---

Elizabeth M. Melton, Esq., counsel for Plaintiff.

Jeff M. Zalasky, Esq, Iverson Reuvers, LLC, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Anoka County Community Action Program ("ACCAP"). For the reasons stated below, the Court denies Defendant's motion.

## BACKGROUND

ACCAP owns, manages and maintains rental properties in Anoka County. (Aff. of JoAnn Wright ("Wright Aff.") ¶ 3.) Many of the residents of ACCAP's housing units are individuals with low incomes who receive subsidized housing allowances and who, in many instances, are physically or emotionally disabled. (*Id.* ¶ 4.)

Plaintiff Ernest Nelson was a tenant of ACCAP and was also employed by ACCAP as an apartment manager. Nelson lived and worked at ACCAP's Anoka West

location. Nelson was employed by ACCAP from roughly 1996 until June 7, 2006. (Aff. of Jeff M. Zalasky, Esq. ("Zalasky Aff.") ¶ 2, Ex. A (Dep. of Ernest Nelson ("Nelson Dep.")) at 29-30.) Nelson testified that his supervisors at ACCAP included Jerry Hanson, JoAnn Wright, Abbie Klersy, and Robin McKay. (*Id*. at 41-43.) Nelson was terminated from his position for reasons not relevant to this action.

Nelson claims that he was sexually harassed by a female tenant, J.S., while working for ACCAP. Nelson claims that J.S. put her arms around him on two occasions during the summer of 2004. (Nelson Dep. at 53-57.) Nelson also testified that he told J.S. not to touch him. (*Id*. at 55.) Nelson further claims that J.S. repeatedly exposed herself and made sexually explicit comments to him. For example, Nelson claims that J.S. raised her shirt and exposed her breasts to him on approximately forty to fifty occasions between 2004 and the time she left in 2006. (*Id*. at 59.) Nelson also testified that J.S. dropped her pants on three occasions. (*Id.* at 60-61, 73-75, 79-80, 86.) On one such occasion during the winter of 2005/2006, J.S. exposed herself to Nelson and a snowplow operator. (*Id*. at 61, 73-75.) During that incident, she lifted her shirt, exposed her breasts, dropped her pants while not wearing underwear, turned around and bent over. (*Id*. at 74.)

Nelson asserts that he informed his supervisors about J.S.'s conduct several times. First, Nelson asserts that he informed Abbie Klersey "right away" after J.S. first put her arms around him in the summer of 2004; and that he spoke to Abbie Klersey, JoAnn Wright, and Jerry Hanson when it happened again days later. (*Id*. at 53-54, 56-57.) Nelson also testified that he talked to Abbie Klersy about J.S. lifting her shirt

2

approximately twenty times and that he put his complaints on work orders. (*Id.* at 62, 65.) Nelson also testified that he spoke to JoAnn Wright about J.S.'s conduct. (*Id.* at 70.) Nelson asserts that J.S. left the ACCAP apartments in Fall 2006. (*Id.* at 45.)

Nelson filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter on August 31, 2007. In his Amended Complaint, Nelson asserts a claim for sexual harassment in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, *et seq.* ("Title VII"). ACCAP now moves for summary judgment.[1]

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

---

[1] Nelson's memorandum in opposition to ACCAP's motion for summary judgment was untimely. Nelson submitted a motion to accept the untimely memorandum and Defendant objected to that motion. The Court grants Nelson's motion to accept his opposition memorandum.

3

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Nelson asserts a Title VII claim for sexual harassment. "Title VII is violated when workplace harassment based on sex creates a hostile work environment." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997). To establish a hostile work environment claim, Nelson must show: (1) membership in a protected group; (2) that he was subject to unwelcome harassment; (3) that there was a causal nexus between the harassment and membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. *Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005). In addition, because Nelson is not claiming harassment by a supervisory employee, Nelson must establish that ACCAP knew or should have known of the harassment and failed to take prompt and effective remedial action.[2] *Id.*

---

[2] An employer may be responsible for the acts of a non-employee, such as J.S., where the employer knows or should have known of the alleged harassing conduct and fails to take corrective action. *See Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1108, 1112-13 (8th Cir. 1997).

4

"Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3). To be actionable, the conduct must have been "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *See Hathaway*, 132 F.3d at 1221 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The plaintiff must show that the offending conduct created an objectively hostile environment and that he subjectively perceived his working conditions as abusive. *Id.* However, "[o]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998). The plaintiff must also show that the conduct was discriminatory in nature and based on sex. *See Hathaway*, 132 F.3d at 1221. In determining whether the work environment is hostile or abusive under Title VII, courts must examine the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unnecessarily interferes with an employee's work performance. *See Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998) (quoting *Harris*, 510 U.S. at 23).

Here, Nelson has submitted evidence that J.S. exposed herself to him on forty to fifty occasions, that J.S. repeatedly made sexually explicit comments to Nelson, and that she dropped her pants in front of him on several occasions. Nelson also testified that he

complained about J.S.'s conduct to his supervisors at ACCAP on several occasions, but that ACCAP took no action to end the alleged harassment.

ACCAP argues that even if the incidents occurred as described by Nelson, they do not constitute unwelcome harassment affecting a term or condition of employment. ACCAP asserts that J.S.'s conduct did not affect a term or condition of his employment and was not directed at him because of his sex. Further, ACCAP asserts that J.S.'s conduct was not sufficiently pervasive or severe to rise to the level of a hostile work environment. Specifically, ACCAP contends that Nelson was able to do his work because he only encountered J.S. when working in the building in which she lived, and that when he worked in J.S.'s building he could lock the door to the apartment in which he was working to avoid seeing her. ACCAP also points out that the population of people residing at ACCAP's Anoka West location includes a number of people with known inadequacies in social skills and that this factor weighs against Nelson's claim of a hostile work environment.

The Court concludes that Nelson has pointed to sufficient record evidence to raise a genuine issue of material fact regarding whether he was subjected to a hostile work environment. Nelson has testified that he was subjected to repeated conduct over several years by J.S. that was explicitly sexual in nature. Nelson has also testified that he informed his supervisors of J.S.'s behavior, but that ACCAP did nothing to stop the conduct. When viewed in the light most favorable to Nelson, the evidence presented, along with all reasonable inferences, could lead a reasonable juror to conclude that J.S.'s behavior was sufficiently severe and pervasive so as to create a hostile work environment

for Nelson. ACCAP's arguments suggesting that Nelson could avoid seeing J.S. or lock himself into the various apartments in which he worked, along with the fact that many ACCAP residents have emotional disabilities, are certainly relevant to Nelson's Title VII claim. However, the ultimate determination of whether J.S.'s conduct created a hostile work environment will be for the jury. Further, even though others were sometimes present when J.S. exposed herself to Nelson, a reasonable juror could conclude that J.S.'s behavior was directed at Nelson because of his sex. Again, this is a question for the jury.

For the above reasons, ACCAP's motion for summary judgment is denied.

## CONCLUSION

As the Court previously stated in its July 10, 2008 Order denying in part a motion to dismiss, the fact that Nelson's Title VII claim survives Defendant's Motion for Summary Judgment should not cause Nelson to equate this victory with a likelihood of prevailing at trial.

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 50) is **DENIED**.

2. Plaintiff's Motion to Accept Untimely Memorandum (Doc. No. 59) is **GRANTED**.

Dated: August 14, 2009            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge